IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DAVID IVEY,

                    Petitioner,

      vs.

ASHLEY SACRISTE,

                    Respondent.

**8:19CV153**

**MEMORANDUM
AND ORDER**

This matter is before the court on Petitioner David Ivey's ("Petitioner" or "Ivey") Petition for Writ of Habeas Corpus. (Filing 1.) For the reasons that follow, Petitioner's habeas petition is denied and dismissed without prejudice.

## I. CLAIMS

Summarized and condensed,[1] and as set forth in the court's prior progression order (filing 3), Petitioner asserted the following claims that were potentially cognizable in this court:

Claim One:        Petitioner was denied a fair hearing, due process of law, and equal protection at his July 13, 2017 review hearing conducted pursuant to the Sex Offender Commitment Act ("SOCA"), Neb. Rev. Stat. §§ 71-1201 to 71-1226, because (1) he was not permitted to challenge the sufficiency of evidence supporting his commitment as a dangerous sex offender and (2) the State of Nebraska did

---

[1] Petitioner did not object to the court's summary and condensation.

1

not present sufficient evidence to support an order of commitment.

Claim Two:    The Norfolk Regional Center's discharge criteria requiring Petitioner to make a direct or indirect admission of guilt to unproven and acquitted allegations before he is allowed his liberty violates Petitioner's rights under the Fifth Amendment and fall outside the scope of SOCA.

Claim Three:    SOCA is unconstitutional as applied to Petitioner.

Claim Four:    Petitioner was denied due process of law because the 2017 order of commitment issued by the Mental Health Board of the Fourth Judicial District relied upon the unlawful 2006 order of commitment and is, therefore, void.

## II. BACKGROUND

Much of the background information has been derived from this court's orders in Ivey's two prior federal habeas cases, *Ivey v. Gibson*, 4:07CV3242, 2008 WL 5392136 (D. Neb. Dec. 19, 2008) (4:07CV3242, filing 69), and *Ivey v. Gibson*, No. 8:12CV61, 2012 WL 4370669 (D. Neb. Sept. 21, 2012) (8:12CV61, filing 12); the Nebraska Court of Appeals' opinion in *In re Interest of D.I.*, No. A-18-237, 2018 WL 6839726 (Neb. Ct. App. Dec. 31, 2018) (filing 9-1), *review denied* (Mar. 19, 2019); and the Nebraska Supreme Court's opinion in *In re Interest of D.I.*, 799 N.W.2d 664, 667 (Neb. 2011).[2]

_____

[2] The court can sua sponte take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981). Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *Id.* The court can also sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue. *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996).

## A.  2006 Commitment and Appeal

Ivey is currently confined at the Lincoln Regional Center ("LRC") in Lincoln, Nebraska.[3] ([Filing 1 at CM/ECF p. 1](); [Filing 14]().) He was convicted of sexually assaulting a child in 2003 in the District Court of Douglas County, Nebraska. For this crime, the court sentenced Ivey to imprisonment for a period of five years to five years, with credit for three days of time served.

On May 31, 2006, an employee of the Nebraska Department of Correctional Services sent a letter to the Douglas County Attorney notifying that office that Ivey was scheduled to be discharged on November 11, 2006. The letter recommended that Ivey be referred to a Mental Health Board for possible commitment. On October 12, 2006, a Deputy Douglas County Attorney filed a petition with the Douglas County Board of Mental Health ("mental health board"), requesting that Ivey be adjudged a dangerous sex offender under SOCA. On October 23, 2006, Dr. Steven Skulsky evaluated Ivey; diagnosed him, within a reasonable degree of medical certainty, with paraphilia and a personality disorder; and recommended that he receive treatment in an in-patient locked environment. On November 16, 2006, Ivey was scheduled to be released from his prison term. On December 21, 2006, the mental health board heard the petition regarding Ivey's potential confinement under SOCA. At the hearing, Dr. Skulsky testified that Ivey was dangerous to others and needed to be incarcerated for inpatient treatment because of his "dangerousness and the likelihood of acting out." *Ivey*, 2008 WL 5392136, at *1. The mental health board adjudged Ivey to be a dangerous sex offender, "by clear and convincing evidence," within the meaning of SOCA, Neb. Rev. Stat. §§ 71-1201 to 71-1226, and ordered him to be placed in the custody of the Nebraska Department of Health and Human

_____

*See also Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (courts "may take judicial notice of judicial opinions and public records").

[3] When Ivey commenced this habeas proceeding, he was confined at the Norfolk Regional Center ("NRC") in Norfolk, Nebraska. He was later transferred to LRC.

Services ("DHHS") for inpatient sexual offender treatment with no set release date. *Id.*

On January 16, 2007, Ivey filed a Petition in Error in the Douglas County District Court, challenging the action of the mental health board on several grounds, including the constitutionality of SOCA. Ivey alleged that SOCA was an ex post facto law, placed him in double jeopardy, and violated his right to equal protection. He also alleged that the decision of the mental health board was not supported by clear and convincing evidence. On May 16, 2007, the Douglas County District Court heard Ivey's Petition in Error, received into evidence the bill of exceptions from the mental health board hearing, and allowed the parties to file briefs in support of their positions. On August 30, 2007, the Douglas County District Court denied the Petition in Error and affirmed the commitment order of the mental health board.

Ivey appealed the Douglas County District Court's decision to the Nebraska Court of Appeals. But before the court could consider the appeal, Ivey moved to dismiss it. The Nebraska Court of Appeals sustained Ivey's motion and dismissed the appeal on January 11, 2008.

## B.  2007 Federal Habeas Case

On October 1, 2007, Ivey filed his third[4] habeas corpus petition in this court. On May 28, 2008, Ivey's court-appointed counsel filed a Second Amended Petition

---

[4] On November 9, 2006, Ivey filed his first habeas corpus petition with this court. (*Ivey v. Houston*, No. 8:06CV207, Filing 1.) On December 20, 2006, he filed his second habeas corpus petition with this court, alleging that he had been held past his release date and that the application of SOCA to his sentence was an unconstitutional ex post facto law because it was enacted after his conviction. (*Ivey v. Houston*, No. 8:06CV767, Filing 1.) On July 16, 2007, Ivey's second petition for habeas corpus was dismissed without prejudice, and the claims in that petition were consolidated with the claims in his first petition. (8:06CV767, Filing 13.) On October 23, 2007, following the filing of Ivey's third habeas corpus petition, the first

for Writ of Habeas Corpus on his behalf. The court dismissed Ivey's habeas petition without prejudice because Ivey had not exhausted his claims in state court. The court acknowledged that Ivey could bring his claims before the court at a later time if he exhausted his state remedies following a mental health board's new or modified treatment order under SOCA.

## C. 2009 Mental Health Board Review Hearing

On June 12, 2009, Ivey asked the mental health board to reconsider its decision regarding his commitment. The mental health board denied relief. Ivey appealed the mental health board's decision to the Douglas County District Court, which also denied relief. Ivey then appealed the Douglas County District Court's decision to the Nebraska Supreme Court, which found the State had presented clear and convincing evidence that Ivey remained a dangerous sex offender and that secure inpatient treatment was the least restrictive treatment alternative.

## D. 2012 Federal Habeas Case

On February 10, 2012, Ivey filed his fourth habeas petition in this court and an amended petition on May 31, 2012. These petitions generally challenged the mental health board's 2006 and 2009 determinations that Ivey was a dangerous sex offender and secure inpatient treatment was the least restrictive treatment alternative.

The court dismissed Ivey's claims challenging the mental health board's 2006 commitment order because Ivey did not prosecute an appeal to the Nebraska Court of Appeals or a petition for further review to the Nebraska Supreme Court and thus did not exhaust the remedies available to him in the Nebraska state courts. The court further found that Ivey had not demonstrated that circumstances existed that rendered Nebraska's appellate review process ineffective to protect his rights and

---

petition was dismissed without prejudice based on Ivey's failure to prosecute. (8:06CV207, Filing 24.) *See also Ivey*, 2008 WL 5392136, at *2 n.4.

had not argued cause and prejudice to excuse the procedural default of these claims. The court also dismissed Ivey's claims challenging the mental health board's 2009 commitment order because Ivey failed to raise the federal constitutional claims he raised in his petition and amended petition in the Nebraska state courts and thus did not give the state court a full and fair opportunity to resolve the federal constitutional claims before raising them in federal court. In addition, the court found that Ivey had not argued cause and prejudice to excuse the procedural default of these claims.

The court granted the respondents' motion for summary judgment and dismissed the petition without prejudice "to reassertion because Ivey may challenge his confinement at a later time if he exhausts his state remedies following a mental health board's new or modified treatment order under Nebraska's [SOCA]." *Ivey*, 2012 WL 4370669, at *3.

### E. 2017 Mental Health Board Review Hearing[5]

On June 21, 2017, Ivey filed a motion for a review hearing before the mental health board; he sought an order of discharge or, alternatively, a change in treatment. He also filed a motion in limine that same day seeking to exclude certain evidence relied upon at his initial commitment hearing and the review hearing in November 2009. He claimed certain evidence, including inadmissible hearsay, prejudiced him and denied him his right to confront and cross-examine witnesses against him.

At the review hearing on July 13, 2017, exhibit 4 (bill of exceptions for review hearing held in November 2009) and exhibit 5 (bill of exceptions for original commitment hearing held in December 2006) were received into evidence for the

---

[5] The facts recited in this section are largely taken from the Nebraska Court of Appeals' decision in *In re Interest of D.I.*, No. A-18-237, 2018 WL 6839726 (Neb. Ct. App. Dec. 31, 2018) (filing 9-1). *See Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition).

limited purpose of determining the motion in limine. The mental health board initially overruled Ivey's motion in limine, but later sustained his renewed motion in limine as to one paragraph[6] located in exhibits 1 and 2 (Ivey's treatment plans of April and July 2017); otherwise those exhibits were received. The State asked the mental health board to take judicial notice of the mental health board's original 2006 commitment order. (Filing 18-4 at CM/ECF p. 15.) Ivey's counsel had no objection, and the mental health board took judicial notice of that order. (*Id.* at CM/ECF p. 15; *see also* Filing 11-3.)

Dr. Jean Laing testified that as a psychologist on staff at NRC, she was responsible for conducting individual and group therapies and psychological evaluations involving setting up an initial treatment plan and directing treatment of patients. She served on a treatment team that reviewed patient progress, updated patient treatment plans, and dealt with "day-to-day" treatment issues. (Filing 9-1 at CM/ECF p. 2; Filing 18-4 at CM/ECF p. 13.) Her curriculum vitae cites experience since 2010 in evaluating adult male sex offenders. She was familiar with Ivey because he was a patient in her facility, having come to the facility in December 2006. Dr. Laing believed Ivey was committed "following his release from prison of where he had served a sentence regarding sexual contact with a child. And . . . it was determined that inpatient treatment was the least restrictive level of care." (Filing 9-1 at CM/ECF p. 2; Filing 18-4 at CM/ECF p. 15.) She recalled the diagnosis from the original commitment order was pedophilic disorder, a nonexclusive type, sexually attracted to males. The record also indicates a separate diagnosis of narcissistic personality disorder.

Dr. Laing had, among other things, reviewed psychological evaluations and worked with Ivey in group therapy in the course of his treatment; as a result, she was aware of the facts of the conviction from 2004. She recounted the facts as follows:

---

[6] That paragraph "contains what reports to be a history of allegations against . . . Ivey, some of which are outside of the 2004 conviction." (Filing 18-4 at CM/ECF pp. 29-30.)

> [Ivey] was accused of and convicted of contact with a prepubescence male's buttocks: Massaging, spanking. And there were actually multiple—there were two children who were involved with the allegations, only one of the allegations was convicted. They were two brothers. There had been repeated interactions with the children over a period of time, and the last incident was in his apartment when he gave a bare-bottom spanking to the child when the boy wouldn't go home when [Ivey] wanted him to.

(Filing 9-1 at CM/ECF p. 2; Filing 18-4 at CM/ECF p. 18.)

In 2015, Dr. Laing was assigned as Ivey's individual therapist and met monthly with Ivey "until last year" (2016), when "he indicated he did not want to meet any further and didn't see any purpose to that" after he had been "declining a number of sessions." (Filing 9-1 at CM/ECF p. 3; Filing 18-4 at CM/ECF pp. 20-21.)

According to Dr. Laing, NRC's inpatient program consisted of four levels and was "part of a larger program offered" by DHHS, with the other part of the program at LRC. (Filing 9-1 at CM/ECF p. 3; Filing 18-4 at CM/ECF p. 22.) She indicated NRC's focus was on people beginning to address thinking, emotions, and behaviors that were involved in the sexual offense, and that LRC's focus was more in depth and ultimately transitional back into the community. To advance from NRC to LRC, "one has to be Level 3 or Level 4." (Filing 9-1 at CM/ECF p. 3; Filing 18-4 at CM/ECF p. 23.) Dr. Laing said Ivey had been at "Level 3" since late 2012. (Filing 9-1 at CM/ECF p. 3; Filing 18-4 at CM/ECF p. 24.) She believed that Ivey progressed slowly in treatment "primarily because he denies having any sexual offenses. He doesn't deny the behavior, he denies that it's sexually motivated. And he—my understanding from him is that he wants to be released through other legal channels than completing the program." (Filing 9-1 at CM/ECF p. 3; Filing 18-4 at CM/ECF p. 26.) Dr. Laing expressed concern, based on her work with Ivey and as part of his treatment team, about Ivey repeating the behaviors that put him in the situation in the first place, and noted that Ivey had "not seen anything wrong with them." (Filing 9-1 at CM/ECF p. 3; Filing 18-4 at CM/ECF p. 36.)

8

Explaining the most recent treatment plan from July 2017 (received as exhibit 2 at the hearing, less the first paragraph), Dr. Laing indicated the treatment plan remained relatively unchanged for a period of time and said Ivey had not obtained "Objective A" (following rules and being cooperative) or "Objective B" (identifying how to prevent future allegations). (Filing 9-1 at CM/ECF p. 3; Filing 18-4 at CM/ECF pp. 31-35.) She found "Objective B" was "a major concern for [Ivey]." (Filing 9-1 at CM/ECF p. 3; Filing 18-4 at CM/ECF p. 35.) Dr. Laing opined to a reasonable degree of psychological certainty that (1) Ivey's mental illness had not been successfully treated or managed to the extent that he no longer posed a threat to the public or society, (2) Ivey still suffered from a diagnosis of pedophilic disorder, nonexclusive type, sexually attracted to males, and (3) inpatient treatment remained the least restrictive alternative.

Ivey testified it was "clear" that "to get through the program, [he does] have to make an admission of guilt," but later agreed that "Objective B" was to identify behavioral changes he could make to prevent future accusations of sexual assault behavior. (Filing 9-1 at CM/ECF p. 3; Filing 18-4 at CM/ECF pp. 60, 65.) And Ivey understood that the question was not asking for an admission of guilt, but rather asking him to identify changes to prevent accusations of sexual assault behavior. What was stopping him from identifying those changes was that, to him, he was "falsely accused and wrongly convicted, meaning that [he] didn't display those behaviors in the first place." (Filing 9-1 at CM/ECF p. 3; Filing 18-4 at CM/ECF p. 66.)

After Ivey's testimony, his counsel offered into evidence the bill of exceptions from Ivey's initial commitment hearing in 2006. (Filing 18-4 at CM/ECF pp. 73, 154-180.) Counsel asserted that the transcript from the 2006 hearing "would describe the conjecture and guesswork that the . . . board engaged in in 2006." (*Id.* at CM/ECF p. 73.) The State objected, arguing that this evidence was not relevant for the purposes of the hearing that day. (*Id.* at CM/ECF pp. 73-74.) The mental health board sustained the objection. (*Id.* at CM/ECF p. 74.)

Following the review hearing, the mental health board entered a one-paragraph order stating:

> [T]he Board finds that [Ivey] was committed to sex offender treatment on an order dated December 21, 2006[,] as a dangerous sex offender. The Board finds by clear and convincing evidence the subject continues to meet the definition of a dangerous sex offender as defined under Nebraska law. The current diagnosis of a mental illness is pedophilic disorder, non-exclusive type: sexually attracted to males; given by the current mental health providers. The Board further finds by clear and convincing evidence that the subject's mental illness has not yet been successfully treated or managed to the extent that the subject no longer poses a threat to the public. Although there was evidence that the subject has progressed in treatment, there is additional treatment proposed for the subject to reach a point where the subject may be considered successfully treated or managed. Therefore[,] the Board finds that inpatient treatment is the least restrictive treatment alternative at this time, which is through the [DHHS]. The order of discharge requested in the motion for review hearing is denied.

(Filing 9-1 at CM/ECF pp. 3-4; Filing 11-3.)

## F.  Appeal to the Douglas County District Court

Ivey appealed the mental health board's decision to the state district court, which held a hearing on January 22, 2018. (Filing 18-2 at CM/ECF pp. 13-15; Filing 18-3.) The court appointed the Douglas County Public Defender's Office to represent Ivey, but at the hearing, Ivey requested to represent himself, and the Public Defender's Office was given leave to withdraw, and Ivey represented himself. (Filing 18-2 at CM/ECF p. 20; Filing 18-3 at CM/ECF pp. 5-7.) After the hearing, the court affirmed the mental health board's decision. (Filing 18-2 at CM/ECF pp. 19-23.) Specifically, the court found that the State "presented clear and convincing evidence that D.I. remains a dangerous sex offender and that secure inpatient treatment continues to be the least restrictive alternative." (Id. at CM/ECF p. 21.)

## G. Appeal to Nebraska Court of Appeals

On March 8, 2018, Ivey filed a notice of intent to appeal the state district court's decision. (*Id.* at CM/ECF p. 24.) In his brief, Ivey assigned, as reordered and restated by the Nebraska Court of Appeals, that the mental health board erred in (1) denying him the right to challenge the original order of commitment and continuing the original order of commitment, (2) failing to admit the bill of exceptions from the original commitment hearing, (3) permitting an expert's opinion which used inadmissible evidence, and (4) accepting treatment goals that would require him to, in effect, accept guilt and which are outside the scope of SOCA. (Filing 9-3 at CM/ECF p. 7; *see also* Filing 9-1 at CM/ECF p. 4.) Ivey also claimed that the state district court erred in affirming the mental health board's ruling and using factual assertions adopted in an earlier appeal to the Nebraska Supreme Court from a prior motion to review. (Filing 9-3 at CM/ECF p. 7; *see also* Filing 9-1 at CM/ECF p. 4.)

On December 31, 2018, in a memorandum opinion, the Nebraska Court of Appeals affirmed the judgment of the state district court. (Filing 9-1 at CM/ECF p. 12.)

## H. Ivey's Petition for Further Review

Ivey filed a petition for further review with the Nebraska Supreme Court. (Filing 24-1.) Ivey assigned that the Nebraska Court of Appeals erred in (1) applying "an unconstitutionally restrictive interpretation to Neb. Rev. Stat. § 71-1219(2), infringing on Ivey's ability to meaningfully seek discharge," (2) affirming the state "district court's decision that [Ivey] cannot challenge the reasons and evidence behind his commitment," (3) affirming the state "district court's decision that sufficient evidence was used to determine [Ivey] to be a dangerous sex offender" and "emphasiz[ing] an expert's right to form an opinion over the probative value of that opinion," (4) affirming the state "district court's decision rejecting [Ivey's] claim that an admission of guilt is a treatment requirement and shifts the burden of proof," and (5) affirming the state "district court's decision rejecting [Ivey's] claim

11

that the treatment goals of protecting [Ivey] from accusation rather than protecting others from harm falls outside the scope of SOCA." (*Id.* at CM/ECF p. 1.)

On March 19, 2019, the Nebraska Supreme Court denied Ivey's petition for further review. (Filing 9-2 at CM/ECF p. 2.)

## I. 2019 State Habeas Petition[7]

On August 26, 2019, after Ivey filed his current federal habeas petition, he filed a petition for writ of habeas corpus in the District Court of Douglas County, Nebraska pursuant to Neb. Rev. Stat. §§ 29-2801 to 2824. (Filing 9-6.) Ivey stated that he was "being unlawfully deprived of his liberty in violation of his rights guaranteed him by the 4th, 6th, and 14th Amendments to the U.S. Constitution, Article I section 3, 7, and 11 of the Nebraska Constitution, and [SOCA.]" (*Id.* at CM/ECF p. 1.) His claim was based on the 2006 order of commitment. Specifically, he alleged:

> 10) At the 2006 hearing . . . , the Board chairman made the claim that [Ivey] was guilty of committing an illegal sexual act that lasted for over a year. This speculation was summarized by the chairman's statement, "We may not know, but you can pretty damn well guess, can't you?"

> 11) Said claim was not offered at the hearing by the State's counsel, nor was it supported by properly admitted relevant evidence.

---

[7] In 2013, Ivey filed a petition for writ of habeas corpus in the state district court challenging, among other things, the sufficiency of the evidence of the 2006 commitment order. *See Ivey v. Gibson*, No. CI13-209 (District Court of Madison County, Nebraska, May 14, 2013). The state district court dismissed this claim because it could have been raised in an appeal of the 2006 commitment order. The court allowed another claim to proceed—that the mental health board's failure to hold a timely hearing was a jurisdictional defect that made the 2006 commitment order void. The court rejected Ivey's argument and dismissed the habeas petition, and the Nebraska Supreme Court affirmed on appeal. *See D.I. v. Gibson*, 867 N.W.2d 284 (Neb. 2015).

12) Said claim was the reason for finding [Ivey] to be a dangerous sex offender, cited by the Board on its [2016] order of commitment . . . . Said claim continues to be cited in subsequent hearings and findings.

l3) The Board's action was demonstrably unlawful, violating the provisions of SOCA and [Ivey's] due process rights.

14) The Board did not have the personal or subject-matter jurisdiction to commit an unlawful action or to issue an order based on that unlawful action. [Ivey's] continued detention is illegal.

(*Id.* at CM/ECF pp. 2-3.) Ivey requested that the court declare the 2006 order of commitment void and order his immediate release. (*Id.* at CM/ECF p. 3.)

On February 25, 2020, the state district court dismissed the action without prejudice pursuant to Neb. Rev. Stat. § 25-217.[8] *See* https://www.nebraska.gov/justice/case.cgi.[9]

## J.  Current Federal Habeas Petition

Ivey filed his current Petition for Writ of Habeas Corpus in this court on April 11, 2019. (Filing 1.) In response to the Petition, Respondent filed an Answer (filing 29), a Brief (filing 30), and the relevant state court records (filings 9, 11, 18 & 24). Ivey filed a brief in response (filings 32 & 33) to Respondent's Answer, and Respondent filed a reply brief (filing 37). This matter is fully submitted for disposition.

---

[8] Neb. Rev. Stat. § 25-217(3) states: "If any defendant is not properly served within the time specified by subsection (2) of this section then the action against that defendant is dismissed by operation of law. The dismissal is without prejudice and becomes effective on the day after the time for service expires."

[9] The court may take judicial notice of state court records. *See* Federal Rule of Evidence 201; *Stutzka*, 420 F.3d at 760 n.2.

13

## III.  OVERVIEW OF APPLICABLE LAW

Two strands of federal habeas law intertwine in this case. They are (1) exhaustion and procedural default and (2) the deference that is owed to the state courts when a federal court reviews the factual or legal conclusions set forth in an opinion of a state court. The court elaborates upon those concepts next so that it may apply them later in a summary fashion as it reviews Ivey's claims.

### A.  Exhaustion and Procedural Default

As set forth in 28 U.S.C. § 2254:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. *Id.* at 844. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation omitted). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred

from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n.1.

## B. Nebraska Law Relevant to Procedural Default

In Ivey's case, the state-court procedure available to him under SOCA was not a criminal appeal and postconviction proceeding, but it was nearly identical state-court procedural due process. SOCA provides that "[t]he subject of a petition [for commitment] or the county attorney may appeal a treatment order of the mental health board . . . to the district court. . . . A final order of the district court may be appealed to the Court of Appeals in accordance with the procedure in criminal cases." Neb. Rev. Stat. § 71-1214. Accordingly, the prosecution of an appeal to the Nebraska Court of Appeals, and a petition to the Nebraska Supreme Court for further review, are required for exhaustion of state court remedies by one challenging a commitment under SOCA, unless the exception in 28 U.S.C. § 2254(b)(1)(B)(ii) applies, *i.e.*, 'circumstances exist that render such process ineffective to protect the rights of the applicant.'"[10] *See Ivey*, 2012 WL 4370669, at *2; *Ivey*, 2008 WL 5392136, at *4.

Furthermore, Neb. Rev. Stat. § 71-959(9) "empowers a subject in custody or receiving treatment under the SOCA '[t]o file, either personally or by counsel, petitions or applications for writs of habeas corpus for the purpose of challenging the legality of his or her custody or treatment.'" *D.I. v. Gibson*, 890 N.W.2d 506, 512 (Neb. 2017). The Nebraska Supreme Court has "repeatedly held that to release

---

[10] While 28 U.S.C. § 2254(b)(1) requires exhaustion of state court remedies when a petitioner is being held "pursuant to the judgment of a State court," and Ivey is being held pursuant to an adjudication of a mental health board, upheld by the judgment of a state court, this court concludes that the requirement of exhaustion of state court remedies applies. Ivey has not argued to the contrary. The goal of giving "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts" is equally important here, where the state has an interest in first reviewing the constitutionality of its law. *See Ivey*, 2008 WL 5392136, at *4 n.7.

a person from a sentence of imprisonment by habeas corpus, it must appear that the sentence was absolutely void." *Mayfield v. Hartmann*, 375 N.W.2d 146, 149 (Neb. 1985). In addition, "[i]t has long been the rule in [Nebraska] that habeas corpus is a collateral proceeding and as such cannot be used as a substitute for an appeal or proceedings in error." *Id.* at 148 (citations omitted).

## C.  Deferential Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 405-06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA [Antiterrorism and Effective Death Penalty Act] standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* Because the Nebraska Supreme Court denied Ivey's petition for further review, the court may apply the AEDPA standard to the

18

decision of the Nebraska Court of Appeals because it is the "last reasoned decision" of the state courts. *Mark v. Ault*, 498 F.3d 775, 783 (8th Cir. 2007) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

## IV. DISCUSSION

### A. Claim One

In Claim One, Ivey argues that he was denied a fair hearing, due process of law, and equal protection at his July 13, 2017 review hearing conducted pursuant to SOCA, Neb. Rev. Stat. §§ 71-1201 to 71-1226, because (1) he was not permitted to challenge the sufficiency of evidence supporting his commitment as a dangerous sex offender and (2) the State of Nebraska did not present sufficient evidence to support an order of commitment. (Filing 1 at CM/ECF pp. 4-6.)

#### 1. Claim One, Subpart (1)

The crux of Claim One, Subpart (1), concerns Ivey's right to challenge, at the 2017 review hearing, the sufficiency of the evidence presented at his original 2006 commitment hearing. To be clear, this claim does not relate to Ivey's ability to challenge the evidence presented by the State at his 2017 review hearing.[11]

_____

[11] Ivey's claim in the Nebraska state courts also focused on his right to challenge the original 2006 order of commitment at the 2017 review hearing. In his brief to the Nebraska Court of Appeals, Ivey's first assignment of error in his appellate brief reads: "The Board Erred When It Denied Appellant the Right to Challenge the *Original Order of Commitment*." (Filing 9-3 at CM/ECF p. 7 (emphasis added).) Ivey then argued that he was "entitled to challenge his commitment at any time in order to have an incorrect or unlawfully determined order overturned," and that the mental health board erred when it denied him the right to challenge the original order of commitment. (*Id.* at CM/ECF pp. 17, 19; *see also* Filing 9-1 at CM/ECF p. 5.) In his petition for further review, Ivey argued that the "*reason* for the *original* [2006] commitment required review" at his 2017 review hearing. (Filing 24-1 at CM/ECF p. 2 (first emphasis in the original, second emphasis added).)

Ivey did not raise a federal due process or equal protection claim regarding Claim One, Subpart (1), in the Nebraska state courts. Rather, Ivey relied solely on state law grounds. Specifically, Ivey's argument in the Nebraska state courts centered on the interpretation of a state statute—SOCA—and state case law interpreting SOCA. (*See generally* Filing 9-3 at CM/ECF pp. 19-23 (arguing that the mental health board erred when it refused to allow Ivey "to challenge his original commitment in violation of the provisions of [Neb. Rev. Stat.] § 71-1219(1) (right to review) and [Ivey's] right to due process attached under § 71-1219(2)"); Filing 24-1 at CM/ECF pp. 1-4 (arguing that the Nebraska Court of Appeals erred when it applied an unconstitutionally restrictive interpretation to Neb. Rev. Stat. § 71-1219(2), "infringing on Ivey's ability to meaningfully seek discharge").) Although Neb. Rev. Stat. § 71-954[12] refers to the United States Constitution, Ivey did not specifically assert a due process or equal protection violation, refer to the Due Process or Equal Protection Clause of the United States Constitution, or cite a relevant federal constitutional case in the Nebraska state courts. Furthermore, Ivey's general references to "due process" and "unconstitutionally restrictive" is not enough to present a substantive constitutional claim. *See Gray*, 518 U.S. at 153 ("Nor is it enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."). Fair presentation of a federal constitutional claim requires the petitioner to make the federal basis of the claim explicit to the state court, either by citing federal law or decisions of federal courts. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). Ivey cited exclusively to state statutes

---

[12] Neb. Rev. Stat. § 71-954 states:

A subject shall have the right at a hearing held under the Nebraska Mental Health Commitment Act or [SOCA] to confront and cross-examine adverse witnesses and evidence equivalent to the rights of confrontation granted by Amendments VI and XIV of the United States Constitution and Article I, section 11, of the Constitution of Nebraska.

and state court decisions; thus, he failed to adequately indicate that he was asserting a violation of his federal constitutional rights. *See Baldwin v. Reese*, 541 U.S. 27, 33 (2004) (holding that a petitioner's failure to identify a federal claim or to cite case law which might alert the state court to the federal nature of a claim is not fair presentation); *Gray*, 518 U.S. at 163. Therefore, Ivey did not "fairly present" federal due process and equal protection arguments with respect to Claim One, Subpart (1), in the Nebraska state courts in one complete round of review as required by 28 U.S.C. § 2254(b)(1). Accordingly, Claim One, Subpart (1), is procedurally defaulted, not unexhausted, because he cannot now present this claim—as related to his 2017 review hearing—to the Nebraska state courts. In the alternative, as forth below, even if Ivey had not procedurally defaulted this claim, the claim is meritless.

First, Ivey's federal constitutional arguments challenge the Nebraska Court of Appeals' application and interpretation of Nebraska state law. (*See* Filing 1 at CM/ECF pp. 4-5.) A federal habeas corpus action is not a vehicle by which a state prisoner may have a federal court second guess a pure question of state law, such as application and interpretation of state statutory schemes. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.") (internal quotation and citation omitted). That is a question of state law on which the decision of the Nebraska Court of Appeals is dispositive. *See Lupien v. Clarke*, 403 F.3d 615, 620 (8th Cir. 2005).

Second, the Nebraska Court of Appeals considered and rejected the crux of the arguments Ivey now raises as federal due process and equal protection claims. In rejecting Ivey's assertion that he was entitled to challenge the sufficiency of the evidence of the original 2006 commitment order at his 2017 review hearing, the Nebraska Court of Appeals wrote:

(1) Right to Challenge Original Commitment Order

[Ivey] claims that he has never been mentally ill and dangerous. He argues that (1) the State has never presented evidence to prove by clear and convincing evidence that he is a dangerous sex offender and (2) the

21

original commitment order was unlawfully made, invalidating any subsequent order. [Ivey] contends that he is "entitled to challenge his commitment at any time in order to have an incorrect or unlawfully determined order overturned." Brief for appellant at 13. Though he concedes that "the intent of SOCA isn't to re-try a case at each hearing," he maintains that there "is no procedural bar to overturning a previous Board order." Brief for appellant at 19.

However, the SOCA does institute procedural time constraints on the right to appeal certain orders. Under § 71-1214, the "subject of a petition or the county attorney may appeal a treatment order of the mental health board under section 71-1209 to the district court." Further, a "final order of the district court may be appealed to the Court of Appeals in accordance with the procedure in criminal cases." § 71-1214. The proper procedure to be followed when taking an appeal from a final order of the district court under § 71-1214 is the general appeal procedure set forth in Neb. Rev. Stat. § 25-1912 (Supp. 2017). See *In re Interest of L.T.*, 295 Neb. 105, 886 N.W.2d 525 (2016). To perfect an appeal under § 25-1912, a party must, within 30 days after entry of the order from which the appeal is being taken, file a notice of appeal with the clerk of the district court and deposit the required docket fee unless in forma pauperis status is granted. *In re Interest of L.T.*, supra. See, also, § 25-1912.

[Ivey's] original commitment order dated December 21, 2006, was a final appealable order which had to be appealed within 30 days. See *In re Interest of L.T.*, *supra*; § 25-1912. The record does not indicate that [Ivey] appealed from that original commitment order, therefore, he cannot now directly challenge the sufficiency of the evidence on which the Board relied for its initial decision in that order. See *In re Interest of Saville*, 10 Neb. App. 194, 626 N.W.2d 644 (2001) (reaching a similar conclusion in an individual's action challenging commitment as a mentally ill dangerous person under the Nebraska Mental Health Commitment Act (MHCA)). See, also, *In re Interest of D.I.*, *supra* (noting that procedural time constraints to appeal under MHCA mirror that of SOCA; although two separate acts, MHCA and SOCA have similar procedures). It follows that [Ivey's] present appeal is limited to challenging the Board's most recent denial of his motion for reconsideration seeking an order of discharge or a change in treatment following the review hearing of June 21, 2017, and the district court's

affirmance of that decision. See *In re Interest of D.I.*, *supra* (denial of motion for reconsideration under § 71-1219(1) is a final, appealable order).

(Filing 9-1 at CM/ECF pp. 5-6.)

The Nebraska Court of Appeals also rejected Ivey's related argument that the bill of exceptions from the 2006 hearing should have been admitted into evidence at the 2017 hearing because the mental health board was required to review the reasons behind the original order. The Nebraska Court of Appeals wrote:

(b) Bill of Exceptions of Original Commitment Hearing

[Ivey] claims the Board erred in not receiving the "transcripts" (referring to exhibit 5, the bill of exceptions from the original commitment hearing held in December 2006). Brief for appellant at 23. As mentioned previously, exhibit 5 was received into evidence for the limited purpose of considering the motion in limine. Thereafter, the Board sustained, on relevancy grounds, the State's objection to [Ivey's] reoffer of exhibit 5 for the purpose of the hearing.

[Ivey] submits that the bill of exceptions from the original hearing "would have revealed that the 2006 Board had declared all of the State's relevant evidence to be hearsay and inadmissible." Brief for appellant at 22. Citing to *In re Interest of D.I.*, 281 Neb. at 925, 799 N.W.2d at 671, [Ivey] asserts that under § 71-1219(2), the Board's determination of whether the subject's mental illness or personality disorder has been successfully treated or managed, "necessarily requires the board to review and rely upon the original reason for commitment." He acknowledges that the Board took judicial notice of the commitment order of 2006, but he contends that pursuant to the language of *In re Interest of D.I.*, *supra*, cited above, "[i]t is not enough to rely on the original final order, the Board is required to review the reasons behind the order." Brief for appellant at 22 (emphasis in original).

*In re Interest of D.I.*, *supra*, involved [Ivey's] appeal from the denial of his 2009 motion for reconsideration, wherein he claimed there was no basis to keep him in secure inpatient treatment. Contrary to [Ivey's]

assertions in the present appeal, the Nebraska Supreme Court did not create a requirement that a mental health board, as part of a review hearing, must review the bill of exceptions from the original commitment hearing. See *In re Interest of D.I.*, *supra*. Rather, the pertinent analysis focused on the "plain language of the statute," which required the board to determine whether a "subject's mental illness or personality disorder has been 'successfully treated or managed,' which necessarily requires the board to review and rely upon the original reason for commitment." *Id.* at 925, 799 N.W.2d at 671. Therefore, the Supreme Court considered [Ivey's] progress within the treatment program, plan for future behavior, view of culpability, and score on a Static-99 test; an expert's medical opinion as to whether [Ivey] had been successfully treated; and its impression that the Board did not accept that [Ivey's] diagnosis had been successfully treated or managed based on a board member's statement at the review hearing of 2009.

Thus, *In re Interest of D.I.*, *supra*, refutes [Ivey's] position that the Board erred by declining to review the bill of exceptions from the original commitment hearing for the purpose of his review hearing. The Board's action in judicially noticing the original commitment order was sufficient for purposes of the review hearing. The essence of [Ivey's] argument on this alleged error relates to his claim that the original commitment order was unreliable and unsupported by evidence; however, as we have previously stated, [Ivey] may not now directly challenge that original commitment order. The focus of the review hearing is to determine whether the subject has been successfully treated or managed to the extent that the subject no longer poses a threat to the public or a less restrictive treatment alternative exists which would not increase the risk that the subject would commit another sex offense. See § 71-1219(2). . . .

(*Id.* at CM/ECF pp. 6-7.)

Ivey has not established that the Nebraska Court of Appeals' decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the Nebraska Court of Appeals reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding," 28 U.S.C. § 2254(d)(2). As previously discussed by this court twice before, Ivey had an opportunity to challenge the 2006 original commitment order in the Nebraska appellate courts but failed to properly do so. *See Ivey*, 2012 WL 4370669, at *3; *Ivey*, 2008 WL 5392136, at *4. He cannot collaterally attack the original commitment order in subsequent review hearings. *See Ivey*, 2012 WL 4370669, at *3; *Ivey*, 2008 WL 5392136, at *4. Moreover, Ivey does not dispute that he was permitted to present other evidence and confront and cross-examine the State's witnesses and evidence related to his most recent treatment plans at his 2017 review hearing. *See* Neb. Rev. Stat. § 71-954. Thus, the court finds that Ivey was not denied a fair hearing, due process of law, or equal protection at his 2017 review hearing when he was not allowed to challenge the sufficiency of the evidence of the 2006 order of commitment.

### 2. Claim One, Subpart (2)

In Claim One, Subpart (2), Ivey argues that he was denied a fair hearing, due process of law, and equal protection at his 2017 review hearing because the State did not present sufficient evidence to support an order of commitment. (Filing 1 at CM/ECF p. 6.) Specifically, Ivey states that "[t]he only evidence offered by the State and cited in the 2017 order . . . was the expert opinion testimony of Dr. Jean Laing," which lacked foundation. (*Id.*) He alleges that Dr. Laing's "diagnosis and recommendation regarding [Ivey] was based solely on the pre-trial police allegations contained in various third-hand reports and evaluations," which "were never offered into evidence," and that the State "offered no properly admitted, relevant evidence to support Dr. Laing's testimony." (*Id.*) The court understands that Ivey is arguing that the evidence presented by the State was insufficient because it was based on hearsay, lacked probative value, and it should have been excluded.

As with Claim One, Subpart (1), Ivey did not present these arguments in the Nebraska state courts in a federal constitutional context. Rather, he argued evidentiary errors based on state law. (*See* Filing 9-3 at CM/ECF pp. 23-25; Filing 24-1 at CM/ECF pp. 5-7.) Thus, Ivey did not fairly present any federal constitutional

arguments regarding evidentiary errors and sufficiency of the evidence in the Nebraska state courts in one complete round as required by 28 U.S.C. § 2254(b)(1). Accordingly, Claim One, Subpart (2), is procedurally defaulted, not unexhausted, because he cannot now present this claim—as related to his 2017 review hearing—to the Nebraska state courts. In the alternative, as forth below, even if Ivey had not procedurally defaulted this claim, the claim is meritless.

### a. Evidentiary Errors

Although the admissibility of evidence at a state trial is a matter of state law and ordinarily will not form the basis for federal habeas relief, a federal court may grant habeas relief when a state court's evidentiary ruling "infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." *Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994) (quoting *Turner v. Armontrout*, 845 F.2d 165 (8th Cir. 1988)); *see also Williams v. Armontrout*, 877 F.2d 1376, 1383 (8th Cir. 1989), *cert. denied*, 493 U.S. 1082 (1990) (in federal habeas corpus proceedings, the federal court is bound by a state court's interpretation of state law). To raise a federal issue, Ivey must demonstrate that the alleged errors were "'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'" *Garcia v. Mathes*, 474 F.3d 1014, 1017 (8th Cir. 2007) (quoting *Rousan*, 436 F.3d at 958-59).

The Nebraska Court of Appeals considered and rejected the essence of the evidentiary arguments Ivey now raises as federal constitutional claims. The Nebraska Court of Appeals wrote:

### (c) Dr. Laing's Opinion

[Ivey] claims the Board erred when it "overruled [his] Motion in Limine . . . and when it allowed in the State's unsupported expert witness testimony and treatment plans." Brief for appellant at 21. In his motion in limine, [Ivey] sought to prohibit the State from referring to a letter written by Dr. Michael Luebbert, police reports from the underlying

26

criminal case, statements of a child protective services worker, the "timeframe allegation" contained in the criminal information, and Dr. Skulsky's report. [Ivey] asserts that Dr. Laing's testimony "should have been declared inadmissible due to lack of foundation," reply brief for appellant at 5, that the treatment plans (exhibits 1 and 2; referenced in Dr. Laing's testimony) were prepared in reliance on inadmissible allegations, and that the psychological evaluations referenced in Dr. Laing's testimony were inadmissible for lack of foundation and probative value. Based on those assertions, [Ivey] claims inadmissible hearsay was introduced into evidence.

It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his or her opinion about an issue in question. *In re Interest of A.M.*, 281 Neb. 482, 797 N.W.2d 233 (2011). Mental health boards must apply the rules of evidence. *Id.* See, also, § 71-1226 (rules of evidence applicable in civil proceedings shall apply at hearings held under SOCA). Under Neb. Evid. R. 703, Neb. Rev. Stat. § 27-703 (Reissue 2016), facts or data an expert relies upon may be "perceived by or made known to him at or before the hearing" and "need not be admissible in evidence" if experts in the field reasonably rely on such facts or data in forming opinions or inferences. But because a SOCA hearing may result in a serious deprivation of the defendant's interest in liberty, the State's evidence must be sufficiently reliable to comply with due process. *In re Interest of A.M.*, *supra*.

Our analysis regarding the motion in limine is restricted. Our record does not contain any of the documents referenced in the motion in limine. Regardless, aside from Dr. Skulsky's psychological evaluation, Dr. Laing did not explicitly mention the noted documents in her testimony. Our record also does not contain the other psychological evaluations that Dr. Laing referenced. Even if we assume without deciding that Dr. Skulsky's psychological evaluation was inappropriately relied upon due to hearsay concerns, Dr. Laing relied upon three other psychological evaluations completed by other doctors and her own experience in treating [Ivey] to form her opinion. There is nothing in the record to indicate that the other three psychological evaluations were rooted in any inadmissible information.

Dr. Laing testified that her opinion was based on a review of a presentence evaluation by Dr. Mario Scalora, separate psychological evaluations by Dr. Skulsky (prior to [Ivey's] commitment), Dr. Van Winkle, and an intern (Jennifer Helkenn) under the supervision of Dr. Sturgis, as well as her own (Dr. Laing's) interactions with [Ivey]. Dr. Laing was familiar with [Ivey] because he was a patient in her facility and she had been part of his treatment team consistently since 2011. Dr. Laing participated in the development of [Ivey's] treatment plan. She worked with [Ivey] in a psycho-educational group in 2012 or 2013, for several months, and was a facilitator of his sex offender therapy group in 2014, which met 3 times a week for 90 minutes over the course of a year. She met monthly with [Ivey] for individual therapy from 2015 until sometime in 2016.

We find that Dr. Laing's testimony shows that she had worked extensively with [Ivey] since 2011, she had reviewed the recent treatment plans from 2017, and she was familiar with the facts of [Ivey's] conviction of 2004—not only from her review of the psychological evaluations, but also from her own work with [Ivey] in group therapy. Dr. Laing had reviewed the evaluations "several times over the course of [Ivey's] treatment" and said that evaluations would help prepare a treatment plan for [Ivey]; the members of the Board relied on her use of such sources. Dr. Laing's opinion was supported by facts and data reasonably relied upon by experts in the field and was based on more than mere subjective belief or unsupported speculation. See, § 27-703; *King v. Burlington Northern Santa Fe Ry. Co.*, 277 Neb. 203, 762 N.W.2d 24 (2009) (expert's opinion must be based on good grounds, not mere subjective belief or unsupported speculation; yet courts should not require absolute certainty). Thus, the admission of Dr. Laing's testimony was not in error.

Finally, with regard to the dispute during the review hearing about one paragraph within each of the treatment plans (exhibits 1 and 2), labeled "Progress Update," as containing inadmissible historical allegations against [Ivey], we note that those paragraphs were excluded from evidence following [Ivey's] renewed motion in limine objection. The Board stated the stricken paragraphs from exhibits 1 and 2 would not be used as evidence in making its determination, and the district court's order lacks any indication of reliance on those identical paragraphs. [Ivey's] insistence that the remainder of the treatment plans admitted

into evidence nevertheless relied on allegations from documents disputed under his motion in limine is an unsupported assertion. And regardless, Dr. Laing's testimony substantially covered the remainder of relevant portions of the treatment plans to support her opinion such that any erroneous admission of the admitted portions of exhibits 1 and 2 would have been harmless error. See *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017) (erroneous admission of evidence is generally harmless error and does not require reversal if evidence is cumulative and other relevant evidence, properly admitted, supports finding by trier of fact).

(Filing 9-1 at CM/ECF pp. 7-8.)

The facts articulated by the Nebraska Court of Appeals are confirmed by the state court record. In addition, it is clear that the admission of Dr. Laing's testimony neither resulted in an unfair proceeding nor undermined confidence in the outcome of Ivey's 2017 review hearing. Accordingly, the court finds that the Nebraska Court of Appeals' decision was not based on an unreasonable determination of the facts in light of all the evidence presented in the state court proceeding, nor was the decision contrary to clearly established federal law as determined by the United States Supreme Court.

### b. Sufficiency of the Evidence

The clearly established federal law which applies to a claim of insufficient evidence is *Jackson v. Virginia*, 443 U.S. 307 (1979). According to *Jackson*, in order to obtain habeas corpus relief, a petitioner must establish that upon the evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof beyond a reasonable doubt. The court assumes the theory in the present case is analogous: the federal Constitution requires that the facts justifying a civil commitment be proved by clear and convincing evidence. *See Addington v. Texas*, 441 U.S. 418, 430-33 (1979) (to meet due process demands, the standard of proof in a civil commitment proceeding must be higher than the

preponderance-of-the-evidence standard but may be lower than the beyond a reasonable doubt standard).

In addressing Ivey's sufficiency of the evidence arguments, the Nebraska Court of Appeals wrote:

> (a) [Ivey] Remains Dangerous Sex Offender; Not Successfully
> Treated or Managed
>
> The State must show by clear and convincing evidence that the subject remains mentally ill and dangerous, and the Board must determine whether the subject's mental illness or personality disorder has been successfully treated or managed taking into consideration the original reason for commitment. See, *In re Interest of D.I.*, 281 Neb. 917, 799 N.W.2d 664 (2011); § 71-1209(4); § 71-1219(2)(a); § 83-174.01.
>
> Dr. Laing testified that [Ivey's] conviction involved massaging and spanking of a prepubescence male's buttocks and that there had been repeated interactions with that child and another child; [Ivey] testified that his conviction was for "fondling" not "spanking." Dr. Laing was concerned [Ivey] would repeat these behaviors. She referred to behaviors, which she said [Ivey] described, that were similar behaviors of "[s]panking, massaging children's buttocks, different children. And he continued the behavior in spite of a fairly significant negative consequence"; her reference was to behaviors prior to events that led to [Ivey's] conviction (earlier charges in 1987, upon which [Ivey] was not convicted). The treatment plans report that [Ivey's] progress in treatment remains unchanged, and Dr. Laing said it was "not common" for [Ivey] to remain at "Level 3" for as long as he has and remain in the NRC program for about 10½ years. The treatment plan shows, and Dr. Laing testified, that [Ivey] had reported that he would continue to use spanking "as a form of discipline for children." As the doctor stated, for the last several years, [Ivey] has resisted addressing what he would do to not be accused of a sexual offense in the future.
>
> While the treatment plan indicates [Ivey] denies that his behavior was for sexual gratification, the treatment plan also reports (and Dr. Laing testified) that [Ivey] recognizes how others interpreted his behavior

underlying his conviction as inappropriate. At the review hearing, [Ivey] stated, "what I'm supposed to admit to is not just that I had some sexual intent on spanking, which is what I have admitted to doing, but that I also engaged in this other behavior that they feel that I've also engaged in" (referring to other "allegations" or instances of behavior unrelated to the behavior underlying his conviction).

Dr. Laing testified to a reasonable degree of psychological certainty that [Ivey's] mental illness had not been successfully treated or managed to the extent that he no longer posed a threat to the public or society due to him not addressing behaviors that he would need to change and that [Ivey] still suffered from a diagnosis of pedophilic disorder, nonexclusive type, sexually attracted to males. She said that on a risk assessment instrument, the Static 99, [Ivey] scored in the moderate high range of risk. Dr. Laing thought that [Ivey] believed he did not need the help of professionals in sex offender treatment. Dr. Laing disagreed, saying, "I think that this pattern of behavior, which resulted in a conviction for a sexual offense and involved repeated behavior over time, is not something that he has at all adequately looked at. And I think that this is the treatment . . . appropriate for looking at it."

Given the foregoing, the district court did not err in determining that the State proved by clear and convincing evidence that [Ivey] remains a dangerous sex offender and that his condition had not been successfully treated or managed to the extent required.

(b) Inpatient Treatment Remains Least Restrictive Alternative

The State is also required to present clear and convincing evidence that a less restrictive treatment alternative is not appropriate. See, *In re Interest of D.I.*, *supra*; § 71-1219(2)(b).

[Ivey's] most recent treatment plan states:

> His risks to reoffend are related to his history of sexual deviancy with prepubescent, unrelated boys, a limited history of stable romantic relationships, and his unwillingness to acknowledge the inappropriateness of his behaviors with his victims. He has the perception that he does not need the help of professionals or peers, and he

31

does not have a history of sexual deviancy, but only a conviction of one single act. For these reasons, the treatment team believes that inpatient treatment is the least restrictive form of care.

Dr. Laing testified to a reasonable degree of psychological certainty that inpatient treatment remained the least restrictive alternative given the "repeated behavior of physical contact with prepubescence boys' buttocks," the denial of anything problematic with the behavior, and the refusal to address how he could change the behavior in the future. We find no error in the district court's determination that there was clear and convincing evidence before the Board to support that inpatient treatment remained the least restrictive alternative.

[Ivey] argues, however, that the district court erred by "shifting the burden of proof to [him]," saying it was evidenced by the district court's order. Reply brief for appellant at 7. [Ivey] is referring to the court's statement: "The [district court] finds that the [State] presented clear and convincing evidence that secure inpatient treatment remains the least restrictive treatment alternative and that *[Ivey] presented no evidence beyond denials of culpability and mere assertions to rebut the [State's] expert [Dr. Laing ]*." (Emphasis supplied.) The district court found that the State met its burden of proof that a less restrictive treatment alternative was not appropriate; at that point, [Ivey] was permitted to rebut the State's evidence, but did not sufficiently do so. There was no improper shifting of the burden of proof by the district court, and we find no clear error in the district court's conclusion that [Ivey] did not present sufficient rebuttal evidence to the State's evidence which established there was no less restrictive treatment alternative. See *In re Interest of D.I.*, 281 Neb. at 926, 799 N.W.2d at 672 (once subject has exercised his right to review hearing and asserted that there are less restrictive treatment alternatives available, "the State is required to present clear and convincing evidence that a less restrictive treatment alternative is inappropriate. At that point, the subject may further rebut the State's evidence").

[Ivey] also argues that the district court "placed more weight on the word of the State than on [him]." Reply brief for appellant at 7. The district court reviews the determination of a mental health board de novo on the record, and this court will affirm the district court's

judgment unless clear and convincing evidence does not support the judgment. See *In re Interest of S.J.*, *supra*. As already discussed, the evidence clearly and convincingly supports the district court's judgment.

[Ivey] also asserts that the district court's judicial notice of *In re Interest of D.I.*, *supra*, in which the Nebraska Supreme Court cited an unpublished memorandum opinion from this court, "reintroduce[d] inadmissible evidence into the proceedings." Brief for appellant at 30. There is no merit to this argument. Once again, [Ivey] attempts to detract from the primary issue of whether he has been successfully treated by suggesting that any reference to past determinations, whether in reports or even in appellate opinions, somehow adversely impacts his ability to have a fair review hearing. However, contrary to [Ivey's] claims, there was clear and convincing evidence presented at the Board hearing that he had not been successfully treated; all past reports and court opinions have minimal persuasive value when considering the more significant aspects of Dr. Laing's testimony as to [Ivey's] ongoing treatment progress or lack thereof. In particular, Dr. Laing raised legitimate concerns regarding [Ivey's] lack of progress in treatment and his attitude about recommended services. It was Dr. Laing's opinion that [Ivey] had progressed slowly in treatment because he denied having any sexual offenses even though he did not deny the behavior; rather, he denied the behavior was sexually motivated. Dr. Laing expressed concern about [Ivey] repeating the behaviors that put him in the situation in the first place, particularly since [Ivey] had "not seen anything wrong with them." This evidence supports the Board's decision and the district court's affirmance of that decision. There is nothing in the record to support that the Board or the district court relied on any inappropriate or inadmissible evidence in reaching a decision, and to the extent they did, such consideration would have been harmless in light of the clear and convincing evidence otherwise properly admitted.

(Filing 9-1 at CM/ECF pp. 9-12.)

The court finds that the Nebraska Court of Appeals' adjudication of Ivey's sufficiency of the evidence arguments did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The

Nebraska Court of Appeals admittedly did not cite *Jackson v. Virginia*, the seminal United States Supreme Court decision on sufficiency of the evidence, but "[a] reasonable application of established federal law 'does not require citation of [United States Supreme Court] cases—indeed, it does not even require *awareness* of [the] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *See Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)) (emphasis in original). The Nebraska Court of Appeals did, however, correctly apply the essence of *Jackson v. Virginia* to the question of whether the evidence was sufficient to support finding (1) that Ivey remained a dangerous sex offender and his condition had not been successfully treated or managed and (2) that a less restrictive treatment alternative was not appropriate, and the Nebraska Court of Appeals did so in an objectively reasonable manner; neither the reasoning nor the result contradicts *Jackson v. Virginia*. Ivey has also not shown that the adjudication of the claim by the Nebraska Court of Appeals resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The facts articulated by the Nebraska Court of Appeals are confirmed by the state court record. Thus, the Nebraska Court of Appeals could, and did, find that the State proved by clear and convincing evidence that Ivey remained a dangerous sex offender, that his condition had not been successfully treated or managed, and that a less restrictive treatment alternative was not appropriate. Given the foregoing, the court finds that Ivey cannot overcome the barrier posed by 28 U.S.C. 2254(d).

## B. Claim Two

In Claim Two, Ivey asserts that NRC's discharge criteria requiring him to make a direct or indirect admission of guilt to unproven and acquitted allegations before he is allowed his liberty violates his rights under the Fifth Amendment and falls outside the scope of SOCA. (Filing 1 at CM/ECF p. 7.)

Ivey raised these arguments in his brief to the Nebraska Court of Appeals and in his petition for further review in the Nebraska Supreme Court. (Filing 9-3 at

CM/ECF p. 18; Filing 24-1 at CM/ECF pp. 7-10.) In rejecting the arguments, the
Nebraska Court of Appeals wrote:

> [Ivey] claims that the focus of "Objective B" of his treatment plan
> requires an admission of guilt. However, at the review hearing Dr.
> Laing testified that "[s]everal years ago, we [NRC] decided to stop
> going head on into the denial and look [instead] at how [Ivey] would
> prevent allegations in the future." She clarified that the goal of
> "Objective B," "isn't asking [Ivey] to acknowledge sexual acts in the
> past or sexual motivation for the acts in the past, it's asking him what
> are you going to do to not find yourself accused in the future." [Ivey]
> asserts that this change in the goal means he "didn't have to
> acknowledge wrongdoing, he only had to promise not to do it again,"
> and labels the change as a "difference without distinction." Brief for
> appellant at 23-24.
>
> Notably, the "Discharge Criteria," in the treatment plans say that to
> move to the next level of care, [Ivey] would have to, among other
> things: accept responsibility for his sexual deviancy and exonerate
> victims; acknowledge attractions, arousals, and grooming; become
> aware of significant risk factors to reoffending; develop a written
> account of his sexual history and describe in detail all of his sexual
> assaults (at least five if he has more); begin to describe the negative or
> harmful consequences his assaults have had on victims and others and
> identify his core beliefs that are important to his offending. Although
> the requirement of an admission of guilt may be inferred from those
> stated discharge requirements, the record nevertheless shows that an
> admission of guilt was not required for [Ivey] to move on to LRC. Dr.
> Laing testified the NRC program only requires D.I. to "identify what
> he would do to avoid allegations in the future," and she even stated that
> "people [who] have denied sexual offenses have moved [on to] Lincoln
> [LRC]."
>
> [Ivey] claims, in the alternative, that "the Board, then, is continuing
> [his] custody not to protect others from harm, but to protect [him] from
> other's accusations," and that "[t]o merely seek to prevent an accusation
> based on misinterpretation or misunderstanding falls outside the scope
> of SOCA." Brief for appellant at 24. We disagree with [Ivey's]
> interpretation. NRC's decision to change from addressing a subject's

denial of past sexual acts or motivations to now requiring only identification of behavioral changes to prevent future accusations of sexual assaults appears to strike a balance between permitting the subject's claim of innocence and the necessity of the subject recognizing the types of behaviors which trigger the SOCA. This is especially so where [Ivey's] conviction alone evidences [Ivey's] mental condition and casts light on potential future behavior. See *In re Interest of J.R.*, 277 Neb. 362, 762 N.W.2d 305 (2009) (prior convictions are used for evidentiary purposes under the SOCA; specifically, requiring that the subject be convicted of a sex offense provides evidence of the subject's mental condition and helps predict future behavior).

(Filing 9-1 at CM/ECF p. 9.)

No person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. This provision extends not only to criminal proceedings, but to any proceeding in which the answers might incriminate the individual in a future criminal proceeding. *Allen v. Illinois*, 478 U.S. 364, 368 (1986). To establish a Fifth Amendment claim, Ivey must prove two things: (1) that the testimony desired by the State carried the risk of incrimination, and (2) that the penalty he suffered amounted to compulsion. *See McKune v. Lile*, 536 U.S. 24, 35-36 (2002).

The Nebraska Court of Appeals' finding—that in order for Ivey to move on to LRC, the NRC treatment program did not require Ivey to admit guilt but only "identify what he would do to avoid allegations in the future"—is entitled to deference. The court has carefully reviewed the record in this matter and finds that the Nebraska Court of Appeals' determination was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). Ivey has not submitted any evidence, let alone clear and convincing evidence, that the court was incorrect in its factual determination. 28 U.S.C. § 2254(e)(1). Although the Nebraska Court of Appeals did not cite the Fifth Amendment or any United States Supreme Court cases, the court's reasoning and decision do not contradict them. *See Early*, 537 U.S. at 8; *Cox*, 398

36

F.3d at 1030. Indeed, because Ivey was not required to admit guilt to be discharged from NRC and to move on to LRC, there was no risk of self-incrimination. Ivey's identification of behavioral changes to prevent future accusations of sexual assaults does not equate to an admission of guilt and would not "incriminate him in future criminal proceedings." *Allen*, 478 U.S. at 368. Therefore, Ivey has not established that the Nebraska Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

In addition, the Nebraska Court of Appeals' finding—that NRC's treatment program requiring only identification of behavioral changes to prevent future accusations of sexual assaults is not outside the scope of SOCA—is also entitled to deference. The court has carefully reviewed the record in this matter and finds that the Nebraska Court of Appeals' determination was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). Ivey has not submitted any evidence, let alone clear and convincing evidence, that the court was incorrect in its factual determination. 28 U.S.C. § 2254(e)(1). Nor has Ivey established that the Nebraska Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Indeed, Ivey is essentially challenging the Nebraska state courts' interpretation of SOCA, a state statutory scheme. A federal habeas corpus action is not a vehicle by which Ivey may have a federal court second guess a pure question of state law. *See Estelle*, 502 U.S. at 67.

For the above reasons, Ivey is not entitled to habeas relief on Claim Two.

## C.  Claim Three

In Claim Three, Ivey asserts that SOCA is unconstitutional as applied to him.[13] Ivey broadly states that, "[f]or the reasons cited in Claims [One, Two, and Four], [SOCA], as interpreted by the App. Court and applied to [him], is unconstitutionally punitive in purpose and effect and more akin to a criminal procedure than the civil process intended by the Nebraska legislature and statutory construction." (Filing 1 at CM/ECF p. 7.)

In his brief in support of his habeas petition, Ivey alleges that the Nebraska Court of Appeals' decision demonstrated (1) "that [Ivey] did not have the right to seek discharge from commitment, could not challenge the evidence against him, and could not even protest his commitment except for the denial of a less restrictive treatment alternative"; (2) that "the State was allowed to use incriminating evidence from the record, but that [Ivey] was not allowed to use exculpatory evidence from the same record"; and (3) that Ivey's "acquiescence was the only evidence the [court] would accept from him." (Filing 32 at CM/ECF pp. 20-21.) He contends that the Nebraska Court of Appeals' "interpretation of SOCA . . . effectively strips it of the procedural safeguards directed towards [him], and turns what was intended as a civil procedure into a criminal one," alleging that his "commitment order has become a sentence with no chance for further appeal" and that "[h]e is denied his liberty until he admits, either directly or indirectly, that Respondent was justified in incarcerating him." (Id. at CM/ECF p. 21.) Ivey asserts that the Nebraska Court of Appeals' decision "flies in the face of the intent of the Nebraska legislature, statutory construction, and the controlling precepts" of *Kansas v. Hendricks*, 521 U.S. 346 (1997), and violates his "rights to due process, fair trial, confrontation, and to present evidence in own defense as guaranteed by the 6th and 14th Amendments of the U.S. Constitution." (Id. at CM/ECF pp. 20, 21.)

---

[13] Ivey states that he is not challenging the constitutionality of SOCA. (Filing 32 at CM/ECF p. 21.)

Setting aside any concern as to whether he properly presented such a claim to the Nebraska state courts,[14] it is clear that he is entitled to no relief on the claim.

As an initial matter, the Nebraska Supreme Court has already held that SOCA is not penal in nature and is instead a civil regulatory scheme, *In re Interest of J.R.*, 762 N.W.2d 305 (Neb. 2009), and the Supreme Court held a similar commitment scheme for sexually violent predators in Kansas to be civil on its face, *Hendricks*, 521 U.S. 346. *See also In re S.C.*, 810 N.W.2d 699, 704 (Neb. 2012) ("SOCA is nonpunitive in nature[.]"); *In re Interest of A.M., Jr.*, 797 N.W.2d 233, 257 (Neb. 2011) ("[C]ommitment under Nebraska's SOCA is a civil restraint that does not enhance punishment."). The Nebraska Supreme Court's decision in *In re Interest of J.R.* is not before this court.

Furthermore, the court finds that Ivey misinterprets the Nebraska Court of Appeals' decision as removing procedural safeguards under SOCA and transforming SOCA from a civil proceeding into a criminal one.

First, the Nebraska Court of Appeals' decision does not prevent Ivey from seeking discharge from commitment. The court's ruling that Ivey could not

---

[14] In his brief to the Nebraska Court of Appeals, Ivey cited *Kansas v. Hendricks*, 521 U.S. 346 (1997), and argued that the state district court erred "when it shifted the burden of proof and refused to consider [Ivey's] arguments and evidence. The District Court's decision was unconstitutionally punitive in purpose and effect and more akin to a criminal procedure than the civil process intended by the state legislature." (Filing 9-3 at CM/ECF pp. 29-32.) In his petition for further review in the Nebraska Supreme Court, Ivey relied on *In re Interest of J.R.*, 762 N.W.2d 305 (Neb. 2009), which in turn relied on *Hendricks*, to argue that "[r]equiring a promise to no longer engage in unproven and acquitted behaviors, no matter the stated goals, is punitive in purpose or effect in that it 'promotes the traditional aims of punishment—retribution and deterrence.'" (Filing 24-1 at CM/ECF pp. 8-10.) He also stated: "Without a recourse for collateral attack or the equivalent, SOCA becomes unconstitutionally punitive in purpose and effect." (*Id.* at CM/ECF p. 4.)

collaterally challenge his original 2006 commitment at the 2017 review hearing in no way prevents Ivey from requesting a "review hearing by the mental health board and to seek from the board an order of discharge from commitment or a change in treatment ordered by the board" when the regional treatment center submits its periodic reports regarding Ivey's progress under the treatment plan and any modifications to the plans. Neb. Rev. Stat. § 71-1219(1); *see also* Neb. Rev. Stat. § 71-1216. Indeed, because such reports are produced and filed with the mental health board "no less frequently than every ninety days for a period of one year following submission of the subject's individualized treatment plan and every six months thereafter," Neb. Rev. Stat. § 71-1216, Ivey may seek an order of discharge or a change in his treatment plan from the mental health board at a minimum of every six months. As the Nebraska Court of Appeals explained in its opinion:

Section 71-1219(2) states:

> The board *shall immediately discharge* the subject or enter a new treatment order with respect to the subject whenever it is shown by any person or it appears upon the record of the periodic reports filed under section 71-1216 to the satisfaction of the board that (a) the subject's mental illness or personality disorder has been successfully treated or managed to the extent that the subject no longer poses a threat to the public or (b) a less restrictive treatment alternative exists for the subject which does not increase the risk that the subject will commit another sex offense. When discharge or a change in disposition is in issue, due process protections afforded under [the SOCA] shall attach to the subject.

The State bears the burden to show by clear and convincing evidence that the subject remains mentally ill and dangerous, and under the plain language of the statute, the board must determine whether the subject's mental illness or personality disorder has been successfully treated or managed; this necessarily requires the board to review and rely upon the original reason for commitment. See *In re Interest of D.I.*, 281 Neb. 917, 799 N.W.2d 664 (2011). Once the subject of a petition has

40

exercised his or her right to a review hearing, and asserted that there are less restrictive treatment alternatives available, the State is required to present clear and convincing evidence that a less restrictive treatment alternative is inappropriate. *Id.* At that point, the subject may further rebut the State's evidence. *Id.*

(Filing 9-1 at CM/ECF p. 5 (emphasis added).)

The Nebraska Court of Appeals' decision clearly acknowledges that, under SOCA, Ivey periodically has a right to seek discharge from commitment from the mental health board. In addition, Ivey may appeal to the state district court from any future treatment order and then appeal the final order of the state district court to the Nebraska Court of Appeals. *See* Neb. Rev. Stat. § 71-1214. *See In re D.I.*, 799 N.W.2d at 669. Thus, there is no merit to Ivey's allegation that he does not have the right to seek discharge from commitment or that the commitment order is "a sentence with no chance for further appeal."

To the extent Ivey argues that the Nebraska Court of Appeals' decision left him with no recourse to attack his original 2006 order of commitment and thus transformed SOCA into a punitive proceeding, the court disagrees. As this court has found twice before, Ivey had an opportunity, but did not, prosecute an appeal of the 2006 commitment order to the Nebraska Court of Appeals or a petition for further review to the Nebraska Supreme Court. *See Ivey*, No. 8:12CV61, 2012 WL 4370669, at *3; *Ivey*, 2008 WL 5392136, at *4. Ivey did not demonstrate that circumstances existed that rendered Nebraska's appellate review process ineffective to protect his rights or that he, or his counsel, was objectively impeded from pursuing his appeal in the Nebraska Court of Appeals. *See Ivey*, No. 8:12CV61, 2012 WL 4370669, at *3; *Ivey*, 2008 WL 5392136, at *4. As such, Ivey has procedurally defaulted his claims related to the 2006 commitment order. *See Ivey*, No. 8:12CV61, 2012 WL 4370669, at *3; *Ivey*, 2008 WL 5392136, at *4.

Second, the Nebraska Court of Appeals' decision does not prevent Ivey from challenging the evidence presented against him during review hearings before the

mental health board. Ivey has a panoply of rights at a review hearing under SOCA, including the right to counsel, to present evidence and witnesses, to confront and cross-examine adverse witnesses and evidence, to retain his own expert, and to request an independent evaluation and assessment from an outside expert. *See* Neb. Rev. Stat. § 71-1224 ("[S]ubjects shall be entitled to the rights provided in sections 71-943 to 71-960 during proceedings concerning the subjects under the act."). The Nebraska Court of Appeals' decision does not quell any of these rights. Although the court ruled against Ivey with respect to the admissibility of Dr. Laing's testimony and did not allow Ivey to challenge his original 2006 commitment order, the court's decision in no way prevents Ivey from presenting evidence that inpatient treatment is not the least restrictive means to prevent the "substantial risk of serious harm," as described in Neb. Rev. Stat. § 71-908.

Third, Ivey contends that the Nebraska Court of Appeals' decision allowed the State to use "incriminating evidence from the record" but did not allow Ivey "to use exculpatory evidence from the same record." (Filing 32 at CM/ECF p. 21.) This argument appears to be based on the Nebraska Court of Appeals' determination that the mental health board did not err in taking judicial notice of the 2006 commitment order while declining on relevancy grounds to review the bill of exceptions from that original commitment hearing. Specifically, the Nebraska Court of Appeals stated: "The focus of the hearing is to determine whether the subject has been successfully treated or managed to the extent that the subject no longer poses a threat to the public or a less restrictive treatment alternative exists which would not increase the risk that the subject would commit another sex offense." See § 71-1219(2)." (Filing 9-1 at CM/ECF p. 7.) The focus of the 2017 review hearing was not on the sufficiency of the evidence related to the original order of commitment. (*Id.*) The Nebraska Court of Appeals' ruling that Ivey cannot directly challenge his original 2006 commitment order at subsequent review hearings does not strip Ivey of SOCA's procedural safeguards or transform SOCA into a punitive proceeding.

Last, the Nebraska Court of Appeals' decision does not require Ivey to "acquiesce[]" or admit "that Respondent was justified in incarcerating him." (Filing

32 at CM/ECF p. 21.) As previously discussed, the Nebraska Court of Appeals determined that an admission of guilt was not required for Ivey to move on to LRC, and SOCA does not require an admission of guilt to be discharged. Thus, Ivey's allegation is unfounded.

In short, Ivey's claim that the Nebraska Court of Appeals' interpretation and application of SOCA transforms it into a criminal proceeding and violates his constitutional rights is simply without merit.

## D.  Claim Four

In Claim Four, Ivey contends that he was denied due process of law because the 2017 order of commitment issued by the mental health board relied upon the unlawful 2006 order of commitment and is, therefore, void. Specifically, Ivey alleges:

> The 2017 Board took judicial notice of the 2006 order of commitment . . . , which included the reason for commitment as being a year-long sexual act by [Ivey]. . . . [N]o evidence for this reason was included in the order, in violation of §71-956. [Ivey] offered the record to show that this reason was not based on State's evidence but was instead a speculation by the 2006 Board, summarized by that chairman's statement, "We may not know, but you can pretty damn well guess, can't you?"

> Though not voided as a result, the 2006 Board's action was demonstrably unlawful on many grounds far beyond a simple "sufficiency of evidence" question; the Board abandoned its role as trier of fact to act as advocate for the State and violated [Ivey's] due process rights and the provisions of SOCA.

> The 2017 Board relied upon the unlawful decision of the 2006 Board, which falls outside its jurisdiction. The 2017 order of commitment is therefore void.

(Filing 1 at CM/ECF p. 7 (paragraph numbering omitted).)

In his brief in the Nebraska Court of Appeals, Ivey assigned that the mental health board erred when it continued the unlawful original order of commitment. (Filing 9-3 at CM/ECF p. 2.) He argued:

> Per *In re DI*, supra, the original reasons for commitment have a direct bearing on [Ivey's] current diagnosis and commitment. Review of the transcript (Exhibit 5) . . . would have revealed that the 2006 Board had abandoned its role as trier of fact and instead acted as advocate for the State, utilizing a "guess" and a "belief" in place of clear and convincing evidence to rule [Ivey] a dangerous sex offender. The Board's actions violated [Ivey's] due process rights and the provisions of SOCA.

> The 2006 final order of commitment was unlawfully determined and therefore void. All subsequent review hearings are equally unlawful and void, being dependent upon the findings of the original Board. The 2017 Board erred when it issued its final order continuing involuntary inpatient treatment, in violation of [Ivey's] right to be free of unreasonable seizure and detention as guaranteed by Amendment IV of the U.S. Constitution and Article I, Section 7 of the NE Constitution.

(*Id.* at CM/ECF p. 29.) The Nebraska Court of Appeals appears to have considered this claim in conjunction with Ivey's arguments presented in Claim One, Subpart (1). (*See* Filing 9-1 at CM/ECF p. 5 (stating that Ivey "argues . . . the original commitment order was unlawfully made, invalidating any subsequent order").) Likewise, in his petition for further review, Ivey argued this claim in connection with Claim One but only referred generally to "due process" and did not cite any constitutional amendment or relevant federal constitutional case. (Filing 24-1 at CM/ECF pp. 3-4.) Thus, as with Claim One, Subpart (1), Ivey did not fairly present Claim Four in the Nebraska state courts in one complete round of review as required by 28 U.S.C. § 2254(b)(1).

Respondent argues that this claim is unexhausted in the Nebraska state courts and may yet be raised in a collateral attack brought pursuant to Nebraska's habeas corpus statute. (Filing 30 at CM/ECF pp. 51-52.) Respondent states that, because Ivey's 2019 state habeas petition, which asserted a substantially similar claim as

Claim Four, was dismissed without prejudice pursuant to Neb. Rev. Stat. § 25-217, "state habeas is a remedy that Ivey implicitly represents is available." (*Id.* at CM/ECF p. 52.) Thus, Respondent argues that this is a mixed petition which "requires Ivey to choose whether to drop [this] claim, or to request a stay and abeyance until he exhausts the claim." (*Id.* at CM/ECF p. 3.) Respondent also asserts, however, that "Ivey's state habeas petition fails to state a claim upon which habeas relief can be granted and is meritless." (*Id.* at CM/ECF p. 52.) Ivey has not asked the court to stay his petition.

When faced with a mixed petition, one containing exhausted and unexhausted claims, district courts have four options available: (1) dismiss the petition without prejudice, (2) stay the petition pending the outcome of state proceedings under *Rhines v. Weber*, 544 U.S. 269 (2005), (3) allow the petitioner to delete all unexhausted claims and proceed on the remainder, or (4) if the unexhausted claims are plainly meritless, deny them under 28 U.S.C. § 2254(b)(2). *See Rhines*, 544 U.S. at 277-78.

A stay and abeyance under *Rhines* is only appropriate "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 276-78. In addition, a district court abuses its discretion if it grants a stay when unexhausted claims are "plainly meritless." *Id.* at 277 (citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")).

Even if it is assumed that Ivey has not procedurally defaulted this claim,[15] and that such claim is instead simply unexhausted, the court finds, as discussed below, that this claim is meritless. Thus, a stay would not be appropriate under *Rhines*, and

---

[15] Like Claim Four, Ivey's 2019 state habeas petition appears to center on the evidence presented at the 2006 commitment hearing. As previously stated, Nebraska state courts will not allow a habeas corpus proceeding to substitute for a direct appeal. *See Mayfield*, 375 N.W.2d at 149.

the court may deny Claim Four on the merits notwithstanding any failure to exhaust the claim in the Nebraska state courts. *See* 28 U.S.C. § 2254(b)(2).

Claim Four is simply another attempt by Ivey to attack the 2006 original commitment order. As discussed in Claim One, Subpart (1), the Nebraska Court of Appeals determined that Ivey could not challenge the sufficiency of the evidence of the original commitment order at subsequent review hearings. Although Ivey disagrees with the conclusions of the 2006 commitment order, as previously discussed by this court twice before, Ivey has procedurally defaulted any claims related to the original commitment. *See Ivey*, No. 8:12CV61, 2012 WL 4370669, at *3; *Ivey*, 2008 WL 5392136, at *4. Thus, Ivey cannot attack the validity of the 2017 order by challenging the evidence supporting the original commitment order. Moreover, the mental health board's 2017 order of commitment did not rely on the evidence from the 2006 commitment hearing; rather, it was based on Dr. Laing's expert testimony and Ivey's treatment plans from April and July 2017. In addition, the details that Ivey alleges were improper during his 2006 hearing were excluded at the 2017 review hearing. Accordingly, Ivey has not established that the 2017 order of commitment violated his due process rights, and he is not entitled to habeas relief on Claim Four.

## E.  Conclusion

The court has disposed of all of Ivey's claims and will dismiss this matter in its entirety. However, the court will do so without prejudice to reassertion because Ivey may challenge his confinement at a later time if he exhausts his state remedies following a mental health board's new or modified treatment order under SOCA.

## V.  CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for

certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The court has applied the appropriate standard and determined that Ivey is not entitled to a certificate of appealability.

**IT IS THERFORE ORDERED** that the Petition for Writ of Habeas Corpus (filing 1) is denied and dismissed without prejudice. No certificate of appealability has been or will be issued. Judgment will be issued by separate document.

Dated this 21st day of October, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge